IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

STEPHANIE A. HENZE,

    Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.

No. C14-2035

RULING ON JUDICIAL REVIEW

## TABLE OF CONTENTS

I.    *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    *PRINCIPLES OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . 2

III.    *FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    A.    *Henze's Education and Employment Background* . . . . . . . . . 4
    B.    *Administrative Hearing Testimony* . . . . . . . . . . . . . . . . 4
        1.    *Henze's Testimony* . . . . . . . . . . . . . . . . . . . . 4
        2.    *Vocational Expert's Testimony* . . . . . . . . . . . . . . . 6
    C.    *Henze's Medical History* . . . . . . . . . . . . . . . . . . . . 7

IV.    *CONCLUSIONS OF LAW* . . . . . . . . . . . . . . . . . . . . . . 13
    A.    *ALJ's Disability Determination* . . . . . . . . . . . . . . . . 13
    B.    *Objections Raised By Claimant* . . . . . . . . . . . . . . . . 15
        1.    *Dr. Bernstrom's Opinions* . . . . . . . . . . . . . . . . 15
        2.    *Credibility Determination* . . . . . . . . . . . . . . . . 22
            a.    *Henze's Subjective Allegations of Pain and Disability* . . . . . . . . . . . . . . . . . . . . 22
            b.    *Third-Party Statements* . . . . . . . . . . . . . . 27
        3.    *RFC Assessment* . . . . . . . . . . . . . . . . . . . . 30

V.    *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

VI.    *ORDER* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Stephanie A. Henze on June 13, 2014, requesting judicial review of the Social Security Commissioner's decision to deny her application for Title XVI supplemental security income ("SSI") benefits.[1] Henze asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her SSI benefits. In the alternative, Henze requests the Court to remand this matter for further proceedings.

## II. PRINCIPLES OF REVIEW

Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

---

[1] On July 2, 2014, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have

decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## III. FACTS

### A. Henze's Education and Employment Background

Henze was born in 1971. In school, she completed the eleventh grade. She has not earned a GED. In the past, she worked as a general cashier and a sign printer.

### B. Administrative Hearing Testimony

#### 1. Henze's Testimony

At the administrative hearing, Henze explained that she stopped working because "I couldn't handle being on my feet. I had problems with my back[.]"[2] She also stated that "my kids were young and the wage that I was making really didn't make any sense because we were having to pay child care so I stayed home with my kids."[3] The administrative record shows that Henze has not worked since 2000. The ALJ inquired how she had been supporting herself over the years. Henze testified that:

> Well, I had child support for a little while. I've had to get help from different -- like Operation Threshold, St. Vincent DePaul. I do get food stamps. I've had to sell some furniture to get by the last couple months. I haven't paid my house payment in several months. I'm facing foreclosure right now.

(Administrative Record at 45.)

The ALJ asked Henze what she does during a typical day. Henze responded that:

> I can do light housework. Like I dust. My daughter does the dishes so, once they're dry, I'll put them away. . . . I had three people pass away in a very short period of time. I,

---

[2] Administrative Record at 44.

[3] *Id.*

4

because of that -- it was my uncle, my grandmother and my grandpa that all passed away, I inherited a lot of junk so I -- my house is a wreck because I can't do a lot myself as far as moving stuff but my daughter will put a box up on the couch for me and I'll go through the pictures or whatever that are in the box. I have pets so, you know, I'm letting the dogs out. I call and check on my mother, that kind of stuff.

(Administrative Record at 45-46.) Henze also stated that her daughter does the laundry. According to Henze, her daughter "will bring up the basket and set it next to me and I can fold it but no way could I carry laundry up and down the stairs."[4] She stated that she can prepare meals in a microwave or "something that doesn't require me standing too long."[5] She also stated that her daughter does the majority of grocery shopping because going through a grocery store "that's just too much for me, all that walking[.]"[6]

Henze's attorney questioned Henze about her functional abilities:

Q:    . . . How long can you stand and what happens after you've done it?

A:    I guess it's about 10, 15 minutes. Like I was with my daughter last week and we were at the Dollar Store and, for some reason, it was really busy and I was standing in line and this was after walking through the store to get a couple things and the pain got so unbearable that I just told her to take over and stand in line, I had to go to the car.

Q:    And what about sitting? You've been sitting and you've alternated every, I don't know how many minutes, but you stood up four or five times -- how long can you sit at one time?

A:    It's about 15, 20 minutes before I have to change positions. Usually, at home, I lay down to take the

---

[4] Administrative Record at 46.

[5] *Id.* at 47.

[6] *Id.*

> pressure off the disks. I know, for a fact, that today, I got to go home and lay down. It's killing me sitting here.
>
> Q: Okay. And how long will you have to lay down before you feel better?
>
> A: Well, it's about 15 minutes before the lying down then starts to -- I just have to change positions every few minutes because, I don't know, there's no comfort. I'm constantly hurting. Sometimes it's just unbearable. It gets unbearable. . . .
>
> Q: . . . Do you have problems with walking?
>
> A: Yeah. I could walk out to my mailbox and back. I know no longer could walk in let's say Hy-Vee or Walmart, I mean, and I know this from trying, you know, because I thought the surgeries would work, that I would be better, and, you know, I had to leave because I just couldn't take it anymore. I couldn't walk through the store.

(Administrative Record at 50-51.) Henze also testified that she has difficulty lifting things because lifting causes "a lot" of pain in her lower back. When asked whether she believed she was capable of working full-time, Henze replied "I can't see what kind of job I could do. I'm miserable. I'm in pain constantly."[7]

## 2. *Vocational Expert's Testimony*

At the hearing, the ALJ provided vocational expert Elizabeth Albrecht with a hypothetical for an individual who:

> can lift and/or carry, push and/or pull 10 pounds and stand and/or walk for two hours in an eight hour workday; and sit with normal breaks for a total of six hours in an eight hour workday. The individual can stoop, kneel, crouch, climb ramps and stairs and crawl on an occasional basis. The individual would not be able to climb ladders, ropes or scaffolds. The individual would not be able to work in temperature extremes or high humidity. The individual would

---

[7] Administrative Record at 58.

not be able to work at unprotected heights or around hazards.
In addition, the individual would be able to interact with others
on a superficial basis. The individual could perform simple
and some detailed tasks.

(Administrative Record at 61.) The vocational expert testified that under such limitations, Henze could not perform her past relevant work, but could perform the following jobs: (1) addresser, (2) charge account clerk, and (3) production work final assembler.

### C. Henze's Medical History

On January 29, 2010, Henze met with Dr. Robert Federhofer, D.O., for an epidural steroid injection in her back. Dr. Federhofer noted that Henze "had a number of injections with Dr. Inamdar. She has performed facet joint injections in the mid and lower lumbar spine."[8] Dr. Federhofer further noted that he also had administered multiple facet joint injections to Henze in the past. Henze admitted to Dr. Federhofer that the injections provided little pain relief. Dr. Federhofer reviewed an MRI from October 2009, indicating bulging discs at L3-4 and L4-5, neuroforminal narrowing, asymmetric bulging to the left at L3-4 and generalized bulging annulus fibrosis at L4-5, and moderate neuroforminal narrowing at the left at L3-4 and to a lesser degree on the right. Dr. Federhofer diagnosed Henze with low back pain and degenerative disc disease of the lumbar spine. Dr. Federhofer administered a lumbar epidural steroid injection at L2-3. Unless the injection provided significant pain relief, Dr. Federhofer opined that "[a]t this point, I really do not recommend further epidural injections or facet joint injections. I do not think they are productive."[9]

On February 16, 2011, Henze underwent surgery on her back. Dr. Russell Buchanan, M.D., performed the surgery and diagnosed Henze with left L3-4 disc herniation, causing L4 radiculopathy. Dr. Buchanan performed a left hemilminotomy,

---

[8] Administrative Record at 500.

[9] Id. at 501.

medial facetectomy, partial discectomy, and decompression of the left L4 nerve root. Following the surgery, on March 9, 2011, Henze reported to Lynn Galloway, PA-C, that her back pain was unchanged and left lower extremity pain was worse.

On March 18, Henze had another MRI for her back. The MRI showed a new disc herniation at left L3-4 with entrapment of the L4 nerve root. MaryAnn Amend, ARNP, recommended further surgery. On March 29, Henze underwent a second surgery, involving a lumbar laminotomy, medial facetectomy, a "redo" discectomy at L3-4, and decompression of the left L4 nerve root. On April 18, 2011, Henze returned to Amend for a follow-up appointment. She indicated that her back pain and left leg pain "improved." Amend recommended that Henze continue physical therapy.

On June 30, 2011, Henze had a follow-up appointment with Galloway. She complained of low back pain with pain radiating down her left leg. Upon examination, Galloway diagnosed Henze with degenerative disc disease of the lumbar spine. Galloway noted that:

> [Henze] continues to have low back pain that has worsened and when it gets really bad--pain down the left leg in the anterior thigh. In the last four years she has had between 25 - 30 injections for her back. She has been in therapy sessions 3-4 times. . . . A heating pad does at times bring her temporary relief. Sitting is worse for her. Laying down brings her temporary relief. Prolonged standing or walking also causes her pain. She has had two surgeries on her back, the most recent a re-do Laminotomy on the Left at L3[-]4 with discectomy in March. Her recent MRI shows scar on the left at L3[-]4 with no recurrent disc herniation. She has disc degeneration at L3[-]4 and L4[-]5.

(Administrative Record at 474.) Galloway indicated that a third surgery may be necessary. On July 28, 2011, Henze had a CT scan of her lumbar spine. The CT scan showed mild disc bulging without disc herniation at L5-S1, diffuse disc bulging with mild canal stenosis

at L4-L5, and central disc protrusion with mild canal stenosis at L3-L4. On September 13, 2011, Henze underwent a third surgical discectomy at the L3-L4 and L4-L5 level.

On November 21, 2011, Henze had a follow-up appointment with Dr. Mitchell L. Bernstrom, M.D. Henze reported back and neck pain. Dr. Bernstrom noted that:

> [Henze] has been seeing Dr. Buchanan for her lumbar spine disease and has had three surgeries on her back in the past six months with the latest surgery on 9/13/2011. She really has not had much change in her back pain since then. She also has a lot of pain in her left hip. However, all of the other lower extremity symptoms of tingling and pain are gone since the surgery. She has been having more problems with pain in her neck. She especially has a burning pain around her C-7 spinous process. She does have tingling and numbness in her arms, especially her left arm.

(Administrative Record at 372.) Dr. Bernstrom ordered an MRI and prescribed medication and physical therapy as treatment.

On January 2, 2012, Henze was referred to Dr. Ashar Afzal, M.D., for low back pain management. In reviewing her medical history, Dr. Afzal noted that:

> [Henze] has a long-standing history of lower back pain, has undergone lumbar fusion surgeries at L3-L4 and L4-L5 using both posterior and lateral approach. Her leg pain has resolved, but she continues to experience a significant amount of lower back pain that is described as an aching sensation. It could be stabbing at [] times, could be sharp at times. Pain is predominantly on the right side with radiation to the hip. It is a constant pain that is worse in the morning and at night. It keeps her from sleeping, performing daily activities. Any kind of activity including sitting, standing, walking, lifting, twisting, bending forward and backwards make her pain worse. She also has complaints of stiffness and weakness. She has tried pain medications and physical therapy without much relief.

(Administrative Record at 597.) Upon examination, Dr. Afzal found "marked" reduction in lumbar flexion and extension. Dr. Afzal also found that Henze's gait was slightly

antalgic. Lastly, Dr. Afzal noted "minimal" tenderness over lumbar facets and sacroiliac joints. Dr. Afzal diagnosed Henze with chronic low back pain. Dr. Afzal prescribed medication as treatment.

In a letter dated September 12, 2012, Dr. Bernstrom opined that Henze should be considered "eligible" for disability benefits. Dr. Bernstrom reviewed Henze's medical history, and noted that Henze had "significant problems with low back pain and has been found to have significant lumbar spine disease including herniated disks, facet arthropathy, degenerative disk disease and left leg radiculopathy."[10] Dr. Bernstrom further noted that Henze had undergone three surgeries and numerous pain management interventions, including injections and pain medication. Dr. Bernstrom found that "[i]n spite of this, she has continued to have chronic pain She has not really improved at all as a result of her interventions except for perhaps brief periods of some decrease in her pain."[11] Dr. Bernstrom reviewed her functional abilities as follows:

> [Henze] rarely can sleep through the night without awaking in pain. . . . These pains are worse with movement or with being in any one position for more than 10-20 minutes including sitting, walking, standing, lying or driving. Driving is still her worst activity with pain starting within 10 minutes of driving. . . . At least once a week she gets a severe headache which she thinks is a result of her cervical spine disease. Sometimes she gets a spinning vertigo accompanying this even if she is sitting still.

> She reports that there are several things that she can no longer do. She is unable to do her laundry, dishes, sweep, vacuum, scrub floors, put sheets on the bed or do any housework that requires bending or stooping. . . . Because of her pain she cannot drive very far. . . . She feels she has gotten depressed as a result of this.

---

[10] Administrative Record at 679.

[11] Id.

(Administrative Record at 679-680.)  Dr. Bernstrom concluded that:

> Certainly her objective evidence in terms of cervical and
> lumbar imaging and findings at surgery are supportive of this
> information.  However, additionally, in my personal actions
> with her, I have never found her to be someone who attempted
> to malinger or exaggerate her symptoms.  In fact, I find her
> generally minimizing of her symptoms.  I have found her to be
> genuinely sincere in her desire to be well and productive and
> have a normal life.

(Administrative Record at 680.)

On November 7, 2012, Henze met with Dr. Tejinder S. Singh, M.D., at the
University of Iowa Pain Clinic.  Henze sought management of chronic low back pain.  In
reviewing Henze's medical history, Dr. Singh noted that:

> [Henze] has a complex history of back pain originating close
> to 2 years ago.  She has had a total of 3 surgeries in her lower
> back[.] . . .  None of these surgeries provided her with any
> significant benefit from her symptoms of back pain.  She did
> state that she never had problems with pain going down her
> legs prior to her surgeries and clearly states that she is much
> worse off after her 3 spine surgeries than she is today. . . .
> She states that her pain is localized to her lower back.  She is
> continuing to function, but within 10-15 minutes of standing
> and beginning to walk, she has to stop, because the pain gets
> out of control.  She rates her pain today at 7.5/10 and states
> that is her average daily pain score.  The best she has had over
> the last month is only a 6.5, and she says the pain is a constant
> pain, a deep ache in her lower back on both sides of her lower
> back, going into both hips and sometimes into the buttock
> region. . . .  She does have continued problems with sleep
> because of her pain. . . .  She had no response to the multiple
> treatment options.

(Administrative Record at 757.)  Upon examination, Dr. Singh diagnosed Henze with low
back pain, post-laminectomy syndrome, and facet joint arthropathy.  Dr. Singh

recommended facet joint injections, physical therapy, and non-opiate medication as treatment.

On August 17, 2013, at the request of Henze's attorney, Dr. Bernstrom filled out a "Physical Residual Functional Capacity Questionnaire" for Henze. Dr. Bernstrom diagnosed Henze with severe lumbar disc degeneration, recurrent disc herniation, lumbar discogenic pain syndrome, lumbar facet arthropathy, and chronic low back pain. Dr. Bernstrom opined that Henze's prognosis "is guarded at best since she has already had 3 surgeries, many injections, medications, and physical therapy without resolution or improvement."[12] In discussing her psychological health, Dr. Bernstrom found that Henze suffers from depression. Dr. Bernstrom explained that:

> Of course [Henze] is depressed as a result of chronic pain, failed treatments, and inability to participate in life the way a healthy 42-year-old woman should be able to do, such as going for walks or shopping in a large store like Walmart. However, I think she has done amazingly well at trying to fight this and be as positive and involved in life as possible, as exhibited by her multiple and aggressive efforts (including this current one) to obtain improvement and resolution to these conditions. Her physical pain and impairments are so severe that I do not believe her accompanying depression, which is more a *result* of her conditions and not a *cause* of them, is interfering with her attempts to improve and secure a better life.

(Administrative Record at 794.) Dr. Bernstrom determined Henze's functional abilities as follows: (1) she is able to walk one block; (2) she can sit for 20 minutes at one time and stand for 15 minutes at one time; (3) she can sit, stand/walk less than two hours in an eight-hour workday; (4) she requires a job that would allow shifting from sitting, standing, or walking at will; (5) she can occasionally lift less than 10 pounds; and (6) she should never reach overhead, bend, or twist during an eight-hour workday. Dr. Bernstrom

---

[12] Administrative Record at 793.

concluded that Henze would miss more than three days of work per month due to her impairments or treatment for her impairments.

## IV. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Henze is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the

> listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "bears the burden of demonstrating an inability to return to [his] or her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC [(residual functional capacity)], age, education, and work experience, there [are] a significant number of other jobs in the national economy that [the claimant] could perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 416.945. The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. § 416.945.

The ALJ applied the first step of the analysis and determined that Henze had not engaged in substantial gainful activity since January 30, 2012. At the second step, the ALJ concluded from the medical evidence that Henze had the following severe impairments: degenerative disc disease and scoliosis with surgery to the lumbar spine, headaches, major depressive disorder, and anxiety disorder. At the third step, the ALJ found that Henze did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Henze's RFC as follows:

> [Henze] has the residual functional capacity to perform a range of sedentary work[.] . . . [Henze] can lift and/or carry and push and/or pull ten pounds. She can stand and/or walk for a total of two hours in a workday. She can sit, with normal breaks, for a total of six hours in a workday. [Henze] can crouch, stoop, kneel, crawl, and climb ramps or stairs occasionally. She cannot climb ladders, ropes, or scaffolds. She cannot work at unprotected heights or around hazards. [She] cannot work in temperature extremes or in high humidity. [Henze] can perform simple and detailed work. She can interact with others on a superficial basis.

(Administrative Record at 17.) Also at the fourth step, the ALJ determined that Henze could not perform her past relevant work. At the fifth step, the ALJ determined that based on her age, education, previous work experience, and RFC, Henze could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Henze was not disabled.

## B. Objections Raised By Claimant

Henze argues that the ALJ erred in three respects. First, Henze argues that the ALJ failed to properly consider the opinions of her treating physician, Dr. Bernstrom. Second, Henze argues that the ALJ failed to properly evaluate her subjective allegations of pain and disability. Lastly, Henze argues that the ALJ's RFC assessment is flawed and not supported by substantial evidence in the record as a whole.

### 1.   Dr. Bernstrom's Opinions

Henze argues that the ALJ failed to properly evaluate the opinions of her treating physician, Dr. Bernstrom. Specifically, Henze argues that the ALJ failed to properly weigh Dr. Bernstrom's opinions. Henze also argues that the ALJ's reasons for discounting Dr. Bernstrom's opinions are not supported by substantial evidence in the record. Henze

concludes that this matter should be remanded for further consideration of Dr. Bernstrom's opinions.[13]

The ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence of the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support

---

[13] At the outset of her reply brief, Henze provides a brief argument, and asserts that:

> The Commissioner's Brief, like the ALJ's decision, contains a recurring error. As noted by the ALJ, the relevant time period begins with the date of the SSI application in February 2012. The ALJ and now the Commissioner consistently rely on evidence prior to February 2012 to "prove" [Henze] was not disabled after February 2012.

Henze's Reply Brief (docket number 14) at 2. Henze's assertion lacks merit. In her application for SSI benefits, she alleged a disability onset date of January 15, 2004. *See* Administrative Record at 158. Henze also applied for disability insurance benefits under Title II, again, alleging a disability onset date of January 15, 2004. *See* Administrative Record at 158. Her application for disability insurance benefits was denied for lack of insured status. *See* Administrative Record at 12. As a result, Henze was left with only the possibility of SSI benefits, which are not payable for any time period prior to the application date, which in this case was January 30, 2012. *See* 20 C.F.R. § 416.335. The Court concludes that the ALJ did not err by considering evidence in the record prior to January 30, 2012, as Henze alleged disability beginning in January 2004. *See* Administrative Record at 158 (application for SSI benefits alleging a disability onset date of January 15, 2004).

a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.'*Id..*); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hamilton v. Astrue*, 518 F.3d 607, 609 (8th Cir. 2008).

Also, the regulations require an ALJ to give "good reasons" for assigning weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion from a treating source is not given controlling weight, then the ALJ considers the following factors for determining the weight to be given to all medical opinions: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(c)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). The decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. SSR *96-2P*, 1996 WL 374188 (1996).

In her decision, the ALJ addressed the opinions of Dr. Bernstrom as follows:

> [Henze's] primary care physician, Dr. Bernstrom, submitted a narrative statement (Exhibit 28F). [Henze] did see this doctor on numerous occasions, although it appeared that she had not seen him for more than a year before the second statement. [Henze] submitted a statement to the doctor that identified all of her alleged symptoms, and it appeared that [the] doctor accepted [her] statements at face value. (Exhibit 28F). The statement of [Henze's] doctor is given some weight. It is accepted that [Henze's] depression and her pain are intertwined. The doctor's summary of some of the important past medical findings is accepted. It is doubtful that the doctor is aware of some of [Henze's] activities, including her caregiver role of her Grandfather and others, as noted above, which appeared significantly inconsistent with the opinions of the physician and [Henze's] allegations. It is doubtful that the doctor can determine that [Henze] will be absent from work. Some of the limitations, such as no use of the arms cannot be supported by [Henze's] activities. The doctor is aware of her attempt to obtain disability and apparently believes the receipt of an income will reduce some of [her] symptoms (Exhibit 28F, pg. 8). While the doctor reported that [Henze] could sit less than two hours and could stand and/or walk for less than two hours in an eight-hour workday, this appeared to be based merely on [Henze's] subjective allegations. Notably, the doctor had not personally performed a physical evaluation on [Henze] for a number of years (See Exhibits 23F and 24F). Furthermore, contrary to [Henze's] allegations and the opinions of the physician, treatment records and physical examination findings indicated generally unremarkable findings, which were unsupportive of [Henze's] allegations (Exhibits 14F, 15F, 24F, and 25F).

(Administrative Record at 28-29.)

Here, the ALJ afforded Dr. Bernstrom's opinions "some" weight. In particular, the ALJ accepted Dr. Bernstrom's opinion that Henze's depression and pain are "intertwined." The ALJ also accepted Dr. Bernstrom's summary of Henze's past medical

findings, particularly her MRIs and CT scans supporting the need for back surgery. The ALJ, however, found Dr. Bernstrom's opinions to be inconsistent with Henze's activities of daily living, ability to care for her grandfather, and objective medical findings in the record. For example in considering her activities of daily living, the ALJ noted that:

> Contrary to [Henze's] testimony, physical therapy records revealed she reported caring for her 89-year-old Grandfather. Inconsistent with her allegations of significant pain with driving, she reported driving her grandfather to Iowa City frequently and reported driving her daughter to La Porte daily, noting that she was in the car a lot. She further reported running numerous errands throughout the day, which appeared significantly inconsistent with her testimony regarding her limited daily activities due to pain. Furthermore, examination findings revealed normal sensation and reflexes. She could heel and toe walk[] without difficulty and could perform deep squatting.

(Administrative Record at 22.)

Similarly, in discussing Henze's care for her grandfather, the ALJ found that:

> At the hearing on this matter, [Henze] testified that she had not provided any caregiver roles for her Grandfather, her Mother, or for anyone else. As discussed above, this was directly contradicted by the objective medical findings of record, where she reported caring for her Mother, her Grandfather, and her ex-husband, for a period. Furthermore, she testified that she was not paid to care for her Grandfather. Once again, the medical findings of record indicated that she informed her therapist on two separate occasions that her grandfather was paying her to care for him. On evaluation in October 2010, [Henze] told her therapist that she had a contract with her Grandfather and that she was being paid $1300 per month, which she found equated to about $10 per hour. Similarly, on evaluation in May 2011, therapy notes indicated she reported getting paid $1400 per month from her Grandfather. Notably, [Henze] was able to perform this role despite her allegations of pain, anxiety, and depression. In July 2011, [Henze] reported stressors related to having ongoing family issues,

caring for her Grandfather, and indicated that she was working on selling a house.

(Administrative Record at 25.) The ALJ further noted that in "February 2012, therapy treatment notes indicated [Henze] continued caring for her Grandfather, transporting him despite her physical complaints, and was finishing his house, noting that the Grandfather needed 'a lot of physical support.' On further evaluation, she continued reporting spending the majority of her time caring for her Grandfather."[14]

Lastly, with regard to the objective medical evidence, the ALJ thoroughly addressed and comprehensively discussed Henze's medical history as it related to her difficulties with back pain.[15] For example, in mid-2010, the ALJ noted that Henze "continued to endorse lower back pain, upon further evaluation by her primary care physician. Physical examination findings were unsupportive, showing no weakness, numbness, or tingling in the extremities; normal heel and toe walking, and no sensory deficits."[16] In late 2010, the ALJ pointed out that:

> While [Henze] subsequently continued to report ongoing pain symptoms to her primary care and other providers, with prescriptions for narcotic medications, physical examination findings continued to be unsupportive showing normal posture, gait, range of motion, reflexes, and negative straight leg raise testing. Furthermore, contrary to Henze's testimony of failing physical therapy, records at this time indicated noncompliance in following the doctor's walking instructions, with [Henze] stopping therapy following only three sessions due to feeling it would not be helpful (Exhibits 6F, 7F, 8F, 10F, and 11F)[.]

(Administrative Record at 21.) Following surgical procedures on her back in early 2011, the ALJ noted that:

---

[14] Administrative Record at 25.

[15] *See id.* at 19-29.

[16] *Id.* at 20.

> [Henze] reported improved lower back and lower extremity pain symptoms. She reported no longer having hip and leg pain as she did before the surgery. She indicated that while feeling some fatigue, she was feeling better. . . . On further evaluation at Heartland Neurosurgery, [Henze] reported that while she saw initial improvement of her symptoms, they returned about eight weeks following the surgery. At this time she endorsed increased lower back pain, left hip pain, and left buttock pain that was shooting in nature. Despite these complaints, physical examination findings remained normal, with [Henze] having normal strength (Exhibits 10F and 27F).

(Administrative Record at 22.) In follow-up appointments following Henze's third back surgery, the ALJ pointed out that "she was doing well postoperatively with controlled pain and improvement with physical therapy. Physical examination findings were rather unremarkable, indicating normal gait, station, and normal inspection, palpation, motion, and stability of the spine."[17] In August 2012, Henze met with Dr. Bernstrom. The ALJ noted that:

> During this evaluation, she reported headache symptoms and recent hand pain issues. The doctor noted that [Henze] was in no acute distress, but the doctor did not otherwise perform a physical evaluation, simply prescribing a course of Prednisone for her pain symptoms, as this had worked in the past.

(Administrative Record at 23.) The ALJ further pointed out that the next month, Henze complained of some depression following the death of her grandfather, but "she reported having no difficulties caring for things at home or getting along with people. . . . On examination, she was [in] no acute distress, but she shifted while sitting. She had normal gait and station, with some generalized tenderness over the lower back."[18] At an

---

[17] Administrative Record at 23.

[18] *Id*. at 24.

evaluation in May 2013, even though Henze complained of low back pain, the physical examination "continued to be unremarkable and unchanged from prior testing."[19]

The Court concludes that the ALJ thoroughly addressed inconsistencies between Dr. Bernstrom's opinions and the record as a whole. *See Wagner*, 499 F.3d at 848 ("'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" (Quotation omitted)). Therefore, having reviewed the entire record, the Court finds the ALJ properly considered and addressed the opinion evidence provided by Dr. Bernstrom. Also, the Court finds the ALJ provided "good reasons" for rejecting Dr. Bernstrom's opinions. *See Strongson*, 361 F.3d at 1070; *Edwards*, 314 F.3d at 967. Accordingly, even if inconsistent conclusions could be drawn on this issue, the court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 301.

### 2. Credibility Determination

#### a. Henze's Subjective Allegations of Pain and Disability

Henze argues that the ALJ failed to properly evaluate her subjective allegations of pain and disability. Henze maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered Henze's testimony, and properly evaluated the credibility of her subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency,

---

[19] *Id.*

and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968; *see also Finch*, 547 F.3d at 935 (same); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing

so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

In her decision, the ALJ addressed Henze's subjective allegations of pain and disability as follows:

> After careful consideration of the evidence, the Administrative Law Judge finds that [Henze's] medically determinable impairments reasonably could be expected to cause some of the alleged symptoms. [Henze's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> [Henze] experiences some symptoms and limitations, but the record does not fully support the severity of [her] allegations. As discussed fully above, the objective medical findings of record failed to support [Henze's] allegations of disabling symptoms and limitations. While, [she] did allege[] pain consistently, the findings on radiology are more limited. At the hearing, [she] reported that her medications were not effective, but they made her so shaky that she could not brush her teeth. It does not make sense that an individual with such side effects would continue the alleged ineffective medication. There is no evidence that [Henze] ever reported such to her treating doctors. In fact, she reported, as discussed above, that some of these medications worked better than other methods. Some treating sources advised [Henze] to try other methods besides medications, such as exercise to improve the strength of the trunk and heat application. [Henze] apparently resisted any form of exercise and therapy.

Further eroding the credibility of [Henze's] allegations, records indicated [she] has not had earnings since 2000. Furthermore, [Henze] inconsistently reported that she stopped working due to back pain issues, when previously noting that she only stopped working for childcare. [Her] limited work history indicates less than full motivation for work. In addition, there was no connection to the date of alleged onset, and there was no medical evidence suggesting she sought any treatment in 2004. The earliest records are from 2007. In 2010 and in 2011, [she] indicated pain for about three years, worsening over the prior several months. While not dispositive, the Administrative Law Judge notes applications in 2007 and in 2009, but nothing about 2004.

Treatment records continually noted [Henze] was noncompliant with physical therapy treatment (Exhibits 11F and 25F). Furthermore, [Henze] declined physical therapy (Exhibit 11F, pg. 22), according to the medical records, in contrast to her statements at the hearing. There is no indication that she complied with other directions, such as using heat, walking, exercising, weaning of medication, and cessation of smoking. Generally, individuals with disabling impairments seek medical assistance and follow medical advice in order to obtain some relief from the alleged significant symptoms. [Henze's] failure to do so is one indication, among others, which suggests she is not motivated to fully return to substantial gainful activity and/or is not accurately representing her level of functioning. The failure to follow medical advice is more consistent with a minimal, tolerable, and nondisabling degree of alleged symptoms.

The documents throughout the medical record showed that [Henze] was the caregiver for family members. Furthermore, therapy notes revealed that [she] reported being paid, from $1300 to $1400 per month, to care for her Grandfather during the period under consideration. [She] even reported she thought she was due more of the assets, because of her care and treatment of her Grandfather. When asked very specifically about that at the hearing, [Henze] denied it. As

this appeared inconsistent with the objective treatment notes of record, and inconsistent with her allegations of disabling pain and mental health symptoms, these findings significantly erode the credibility of [Henze's] allegations. . . .

The Administrative Law Judge would note that [Henze's] reported daily limitations due to pain symptoms appeared inconsistent with her reported activities of record including caring for her Grandfather, who needed "a lot of physical support." Furthermore, she reported driving her daughter and grandfather frequently, and reported running errands throughout the day, which was inconsistent with her allegations of difficulties doing such tasks due to pain. Overall, [Henze's] allegations of pain and mental health symptoms affecting her daily activities are contradicted by the objective medical findings of record and [her] activities described to her treating doctors. Based on the findings of record, [Henze] is capable of performing work activity consistent with the assessed residual functional capacity above.

(Administrative Record at 26-28.)

It is clear from the ALJ's decision that she thoroughly considered and discussed Henze's treatment history, medical history, use of medications, functional restrictions, work history, and activities of daily living in making her credibility determination. Thus, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Henze's subjective allegations of disability were not credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Henze's

subjective complaints, the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### b.     Third-Party Statements

Henze argues that the ALJ improperly discredited third-party statements from non-medical sources regarding her allegations of pain and disability. Specifically, Henze asserts that the ALJ improperly discredited statements regarding her functional abilities from her mother, Carolyn Stephens, and sister, Melissa Stephens. Additionally, after the ALJ rendered her decision, in March 2014, Henze's sister Melissa, and her daughter, Maresa Henze, provided additional letters to the Appeals Council regarding Henze's alleged disability. Henze concludes that this matter should be remanded for further consideration of these statements.

When considering third-party statements concerning a claimant's symptoms or impairments, the regulations provide that an ALJ must "'carefully consider any other information you may submit about your symptoms,' including statements 'other persons provide about your pain or other symptoms.'" *Buckner v. Astrue*, 646 F.3d 549, 559 (8th Cir. 2011) (quoting 20 C.F.R. § 404.1529(c)(3)); *see also Willcockson v. Astrue*, 540 F.3d 878, 880-81 (8th Cir. 2008) ("[S]tatements of lay persons regarding a claimant's condition must be considered when an ALJ evaluates a claimant's subjective complaints[.]"). In other words, an ALJ may not ignore the statements of other parties regarding a claimant's condition. *Willcockson*, 540 F.3d at 881.

Here, the ALJ addressed Henze's third-party statement as follows:

> Furthermore, the Administrative Law Judge has considered [Henze's] reportedly limited daily activities, including those noted by third parties. [Henze] did admit at the hearing that she had a large and close family and that she attended family gatherings regularly. This is in contrast to the statement of

[her] Mother that [she] stopped attending family gatherings (Exhibit 10E). The statement of the Mother is given little weight. The statement of [her] sister was virtually identical to that submitted by [Henze]. . . .

The third party reports do not establish that [Henze] is disabled. Since the authors are not medically trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms, the accuracy of the information provided is questionable. Moreover, by virtue of the relationship with [Henze], [her] Mother and sister cannot be considered disinterested third party witnessed [(sic)] whose statements would not tend to be colored by affection for [Henze] and a natural tendency to agree with the symptoms and limitations [she] alleges. Significant weight cannot be given to the third party reports because they, like [Henze's] allegations are not consistent with the preponderance of the opinions and observations by medical professionals.

(Administrative Record at 27-28.)

It is clear from the ALJ's decision that she considered and addressed the statements of Henze's mother and sister. Furthermore the ALJ provided reasons for discounting both statements. By providing reasons for discrediting the statements, the ALJ did more than is necessary according to the Eighth Circuit Court of Appeals, for evaluating the credibility of a third-party witness. In *Robinson v. Sullivan*, 956 F.2d 836, 841 (8th Cir. 1992), the Eighth Circuit determined that failure to provide any reasons for discrediting a third-party witness or statement is not error when support for discrediting such a witness or statement is found in the same evidence used by an ALJ to find that a claimant's testimony is not credible. *See also Lorenzen v. Chater*, 71 F.3d 316, 319 (8th Cir. 1995) ("[A]lthough the ALJ failed to list specific reasons for discrediting the testimony of Carol Bennett, it is evident that most of her testimony concerning Lorenzen's capabilities was discredited by the same evidence that discredits Lorenzen's own testimony concerning his limitations.");

*Buckner*, 646 F.3d at 559-60 (discussing *Robinson* and *Lorenzen* and applying that reasoning to testimony from the claimant's girlfriend). Because the ALJ explicitly considered Henze's mother's and sister's statements and provided reasons for discrediting those statements, the Court concludes that the ALJ properly addressed the third-party statements in making her credibility determinations. Therefore, the Court concludes that Henze's assertion that the ALJ improperly discredited her third-party statements is without merit.

In March 2014, both Henze's sister Melissa, and her daughter, Maresa Henze, wrote short letters stating that Melissa drove Maresa to school and Henze's grandfather to appointments when Henze was unable to drive due to back pain.[20] In affirming the ALJ's decision, the Appeals Council concluded that the additional evidence "does not provide a basis for changing the [ALJ's] decision."[21] The Court agrees with the Appeals Council. The new and additional evidence consists of a two sentence letter from Melissa, and a one sentence letter from Maresa. The letters offer no details regarding Henze's alleged inability to drive, including the time period or frequency with which Henze was unable to drive due to back pain. Therefore, having reviewed the entire record, including the new and additional evidence submitted to the Appeals Council, the Court finds that the ALJ's reasons for discounting the third party statements are supported by substantial evidence on the record as a whole. *See Van Vickle v. Astrue*, 539 F.3d 825, 828 (8th Cir. 2008) (The final decision of the Commissioner should be affirmed if the decision "is supported by substantial evidence on the record as a whole, including the new evidence that was considered by the Appeals Council."). Accordingly, even if inconsistent conclusions could be drawn on this issue, the court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 301.

---

[20] *See* Administrative Record at 259 (Melissa's letter) and 260 (Maresa's letter).

[21] *Id.* at 2.

### 3.   RFC Assessment

Henze argues that the ALJ's RFC assessment is flawed. Specifically, Henze argues that the ALJ's RFC assessment is not supported by substantial evidence. Henze concludes that this matter should be remanded for a new RFC determination based on a fully and fairly developed record.

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at 1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey*, 503 F.3d at 697 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

Additionally, an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing

is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record.").
"There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

In determining Henze's RFC, the ALJ thoroughly addressed and considered her medical history.[22] Furthermore, as discussed in sections *IV.B.1* and *IV.B.2*, and contrary to Henze's assertions, the ALJ properly considered the opinions of Dr. Bernstrom and Henze's subjective allegations in making his overall disability determination, including determining Henze's RFC. Therefore, having reviewed the entire record, the Court finds that the ALJ properly considered Henze's medical records, observations of treating physicians, and Henze's own description of her limitations in making the ALJ's RFC assessment for Henze.[23] *See Lacroix*, 465 F.3d at 887. Furthermore, the Court finds that the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618. Because the ALJ considered the medical evidence as a whole, the Court concludes that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618. The Court concludes that Henze's assertion that the ALJ's RFC assessment is flawed and not supported by substantial evidence is without merit.

## V. CONCLUSION

The Court finds that the ALJ properly considered and addressed the medical evidence and opinions in the record, including the opinions of Dr. Bernstrom, Henze's treating physician. The Court also finds that the ALJ properly determined Henze's

---

[22] *See* Administrative Record at 18-29 (providing a thorough and comprehensive discussion of Henze's overall medical history and treatment).

[23] *Id.* at 18-29 (providing thorough discussion of the relevant evidence for making a proper RFC determination).

credibility with regard to her subjective complaints of pain and disability. Lastly, the Court finds that the ALJ considered the medical evidence as a whole, and made a proper RFC determination based on a fully and fairly developed record. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VI. ORDER

1.    The final decision of the Commissioner of Social Security is **AFFIRMED**;

2.    Plaintiff's Complaint (docket number 3) is **DISMISSED** with prejudice; and

3.    The Clerk of Court is directed to enter judgment accordingly.

DATED this ___8th___ day of April, 2015.


JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA